IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**LINDA ETHERIDGE,**
        Plaintiff,

v.                                        No:   3:04cv355/MCR/MD

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**
        Defendant.

_____

**REPORT AND RECOMMENDATION**

      This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Etheridge's application for disability insurance benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.

      Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed.

## PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance and SSI benefits which were denied initially and on reconsideration.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ) and a hearing was held on October 22, 2002 at which plaintiff was represented by counsel and testified.  A vocational expert also testified.  The ALJ returned an unfavorable decision on January 24, 2003 (Tr. 12-22), and the Appeals Council declined review on August 18, 2004 (Tr. 4-6), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court.  *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had severe conditions of hypertension, diabetes, diabetic gastroparesis and neuropathy, stomach ulcers, status post myocardial infarction, fibroid tumors, low back pain, and hiatal hernia with gastroesophageal reflux disease, but that she did not have any impairments that met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; that she had no disabling mental conditions; that her allegations concerning her limitations were not totally credible; that she had the residual functional capacity for light work with the limitations of no more than occasional climbing or balancing with a need for sit or stand option so that she need not stand or sit longer than one hour at a time or be exposed to temperature extremes; that in mental functioning she has limited but satisfactory ability to deal with work stresses, maintaining attention and concentration, understanding, remembering and carrying out detailed instructions and demonstrating reliability; that she was unable to perform any of her past relevant work; that she was a younger individual with a high school education and no transferrable skills; that she had the ability to perform a significant number of jobs in the national economy such

as inspector/hand packager, photocopy machine operator, and garment folder; and that she was not under a disability as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra*. The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps.  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

The medical record in this case begins in January 2000 when on three consecutive days plaintiff reported to the emergency room with severe nausea and vomiting (Tr. 391, 398, 409).  Two months later, on March 19, 2000, she again went to the emergency room with the same problem and was admitted to the hospital for five days until her situation resolved (Tr. 384-389).  She made similar emergency room visits, twice in April, once in May, and once in June 2000 (Tr. 256, 325, 334, 346,

365). On October 14, 2000 she was again admitted to the hospital for the same problem and stayed for six days (Tr. 313-323), and did the same thing again on December 23, 2000 (Tr. 300-311). P.K. Garg, M.D., treated plaintiff during her last hospitalization and became her regular treating physician at that time. Dr. Garg saw her first in his office on January 4, 2001 when she complained of the flu. Dr. Garg continued to see plaintiff on a regular basis from January 2001 through the time of the ALJ's decision in January 2003, and thereafter. During that same period, plaintiff was hospitalized once for a hysterectomy (Tr. 144-148), twice for continuing problems with nausea and vomiting (Tr. 125-137; 191-213), and once, on March 17, 2002, when she suffered a mild heart attack (Tr. 227-257).

On September 19, 2002, plaintiff's counsel took the deposition of Dr. Garg, who testified that he had been practicing medicine since 1973 and is a board certified family practitioner. He related that plaintiff suffers from hypertension which was difficult to control, diabetes with diabetic gastroparesis and neuropathy (with nerve pain in her legs), visual problems, multiple joint pains including low back pain, high cholesterol, kidney deficiencies secondary to the diabetes and hypertension, coronary artery disease, and one myocardial infarction. Her symptoms included shortness of breath, abdominal pain, anorexia and vomiting, lower back and extremity pain, and swelling in her legs. She also had symptoms of anxiety and depression. She has been on multiple medications for years, many of which have significant side effects, including lethargy, drowsiness, muscle ache and confusion. Based on the plaintiff's condition, her symptoms and the side effects from her medications, it was Dr. Garg's opinion that if plaintiff were to work she would have to take a break for 10-15 minutes every one to two hours, that she could not lift as much as 10 lbs., that she had significant limitations in bending, stooping and walking, that she could walk for no longer than two hours and would need to rest during any time she was on her feet, at least every half hour, and that she would be expected to be absent from work at least three times a month. Also, she would have

significant problems with her vision because of the severity of the diabetes and hypertension (Tr. 258-274).

Plaintiff was seen in consultation at the request of the Office of Disability Determinations by Douglas Bond, D.O. on October 16, 2001. Significant in her physical examination was tenderness in the abdomen, normal range of motion in her spine and extremities, lack of any swollen or deformed joints, normal reflexes, gait, station and strength in her lower extremities. Grip strength was normal. A one minute step test was aborted after 20 seconds because plaintiff was completely exhausted and out of breath. Dr. Bond's assessment was diabetes, apparently not well controlled, decreased visual acuity due to diabetic or hypertension retinal changes, peptic ulcer disease causing anemia, uterine fibroids resulting in a hysterectomy, high cholesterol, myocardial infarction, easy fatiguability and labored breathing and possible degenerative disc disease in the cervical spine. Dr. Bond did not offer an opinion on what limitations the plaintiff might have.

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to give appropriate weight to the opinion of her treating physician, and that she was disabled from her onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of her physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

In the decision on appeal, the ALJ assigned plaintiff a residual functional capacity that would allow plaintiff to perform light work[1] with some restrictions: she

---

[1] The Commissioner's rules define "light work" in relevant part:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting

should do no more than occasional climbing or balancing with a sit/stand option with no sitting for more than one hour at a time, and with no exposure to extreme temperatures.  He also found that her ability to deal with work stresses, concentrate, understand, remember and carry out detailed instructions, and be reliable, was limited but satisfactory.  Plaintiff contends that there is little evidence to support any of these conclusions, and that they are in direct conflict with the opinions of Dr. Garg.  Plaintiff also says that the ALJ did not discount Dr. Garg's opinion as the law requires.

Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner.  *Stewart, supra; Lewis, supra.; Broughton v. Heckler,* 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  Generally, a treating physician's medical opinion is entitled to greater weight than the opinion of a consulting physician. *Wilson v. Heckler*, 734 F.2d 513, 516 (11th Cir. 1984).  In *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986), the Eleventh Circuit ruled:

> The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error. . . .  Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true.

786 F.2d at 1053.  The opinion of a nonexamining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician.  *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).  However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not

---

most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

*Case No: 3:04cv355/MCR/MD*

persuasive evidence of disability. *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). *Compare, Wilson v. Heckler, supra*.

Plaintiff argues that the ALJ did not specifically reject Dr. Garg's findings, something that respondent tacitly acknowledges. The respondent asserts that the ALJ accepted some of Dr. Garg's restrictions, and noted that "as for the remainder, the ALJ noted that it was inconsistent with the medical records (Tr. 18)." (Doc. 16, p. 5). Transcript page 18 is page 7 of the ALJ's decision. Nowhere on that page, nor anywhere else, does the ALJ make that finding. He did reject Dr. Garg's opinion of plaintiff's mental condition, noting that Dr. Garg was not a mental health expert. That is sufficient with respect to plaintiff's mental condition, but is insufficient to address the plaintiff's physical condition. It is not a specification of "what weight is given to [the] treating physician's opinion and any reason for giving it no weight." *MacGregor, supra*, 786 F.2d at 1053. In examining the ALJ's decision the court finds only one other comment directed at Dr. Garg's opinion: "Dr. Garg stated in his deposition that the first time he saw the claimant was in January 2001." (Tr. 19). This is neither preceded nor followed by any explanation of why that is important, or how it figured in the ALJ's analysis of Dr. Garg's opinion. It is indeed true, but Dr. Garg took over plaintiff's care after she had been to the emergency room eleven times and hospitalized twice.

Evidence developed at the hearing undisputably indicated that if Dr. Garg's opinion were accepted, there were no jobs in that economy that plaintiff could perform (Tr. 54). In an attempt to discern exactly what weight the ALJ gave Dr. Garg's opinion, the court thoroughly reviewed the decision, and notes some troubling statements. In the section in which the ALJ discussed plaintiff's subjective complaints of pain he discussed her daily activities, and made the following findings: (1) she goes to church, visits family and friends, watches TV and listens to the radio, (2) her ability to perform "such a variety of daily activities tends to

contradict her subjective complaints," and (3) someone with her claimed level of pain should not "be able to tolerate the physical demands, the level of concentration, or the amount of social interaction, necessary to perform many of these activities." (Tr. 18). This makes little sense. The court will not accept the idea that these simple activities - watching TV, visiting friends and going to church require anything more than the least degree of effort. At steps 4 and 5 of the evaluation process it is appropriate for the Administrative Law Judge to consider a plaintiff's daily activities. *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). If daily activities are to be considered, however, the Administrative Law Judge must do so in the context of all of the evidence in the record:

> We have consistently held that in ascertaining whether the [Commissioner's] findings are supported by substantial evidence, we do not consider only those parts of the record that support those findings, but rather must "view the entire record and take account of evidence in the record which detracts from the evidence relied on by the [Commissioner]."

*Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986).

The *Parker* court found the Administrative Law Judge's reliance upon plaintiff's "daily activities" to discount her testimony as to pain to have been flawed for failure to consider the plaintiff's testimony that she had to lie down after two hours of such work. *Id*. Similarly, in *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995), the court held that a conclusory citation to a plaintiff's "daily activities" as a basis for failing to believe her testimony as to pain was insufficient where there was a medical condition that reasonably could have given rise to the pain described, and, although she testified that she cooked and shopped for herself, she had trouble putting on her clothing. And in *Lewis v. Callahan,* 125 F.3d 1436, 1441 (11th Cir.1997) the court held that participation in "everyday activities of short duration, such as housework or fishing," does not disqualify a plaintiff from disability, so long as such activities are not inconsistent with limitations recommended by the treating physicians. While the ALJ's comments on plaintiff's daily activities were directed at

her complaints of pain rather that at Dr. Garg's opinion, the two issues overlap significantly, since Dr. Garg's opinion was based in part on plaintiff's subjective complaints of pain. The ALJ's finding that plaintiff's daily activities, as she described them, required significant effort is unreasonable.

Equally troubling was the next section of the ALJ's discussion concerning plaintiff's daily activities. There he found that (1) her fairly limited daily activity was not attributable to her medical condition, and (2) the daily activities "are questionable since she indicates she basically does very little." (Tr. 17). This says that plaintiff's limited daily activities are self-imposed, and that her self-imposed daily activities consist of "very little." The assertion that plaintiff said she did very little directly contradicts the ALJ's earlier finding that plaintiff's daily activities required such a degree of effort as to contradict her version of her daily activities. In sum, this entire discussion is at odds with itself, and because it is largely self-contradictory, it fails to stand on substantial record evidence.

Finally, the ALJ wrote an opinion that stressed the facts and findings he thought were important, but the court is concerned that he leaned too far in the direction of justifying his decision rather than fully explaining it. For example, twice he pointed out that plaintiff had gone to the emergency room on "several different occasions," and detailed four of them, noting that plaintiff was admitted to the hospital after one of them (Tr. 14, 18). Plaintiff actually went to the emergency room *fourteen* times, not four times, and she was admitted to the hospital after five of them, not only once (Tr. 125, 191, 227, 284, 292, 300, 313, 325, 334, 346, 365, 384, 391, 398, 409). Fourteen emergency room visits is not reasonably described as "several," which is defined as "an infinite number more than two and fewer than many." *Webster's Collegiate Dictionary,* 10th Ed. In the context of this case, fourteen grains of sand may not be many, but fourteen trips to the emergency room is not just "several." By itself this may be nothing more than a simple exaggeration, but given the ALJ's failure even to address Dr. Garg's opinion directly, his confusing and self-

contradictory discussion of plaintiff's daily activities, and this example of a possibly careless statement of the facts, the court is not able to find that the ALJ's decision was based on substantial record evidence.

## CONCLUSION

The ALJ did not, as required by *MacGregor, supra,* specify what weight he gave Dr. Garg's opinion, nor did he properly refute it. His findings incidental to his discussion of plaintiff's subjective complaints of pain were suspect at best, and his mention of plaintiff's "several" emergency room visits gives further cause for the court to question the reliability of his overall findings. This court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." Title 42 U.S.C. § 405(g). Remand is ordinarily appropriate for rehearing if the Commissioner failed to apply the law and regulations, or where the taking of additional evidence is necessary. However, it is the law of this Circuit that where the ALJ fails properly to discount the opinion of the treating physician, he is held as a matter of law to have accepted it as true. *MacGregor v. Bowen, supra*. When evidence has been fully developed and points unequivocally to a specific finding, the court may enter the finding that the Commissioner should have made. The court can reverse without remand where the Commissioner's decision is in plain disregard of the law and evidence. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *MacGregor, supra; Hale, supra*. Moreover, the failure to apply the correct legal standard is grounds for reversal, not remand. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1983). Dr. Garg's opinion unequivocally supported a finding of disabled. Since the ALJ has accepted that opinion, further evidentiary development is not necessary. Plaintiff is entitled to reversal and the award of benefits.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be REVERSED, that the Commissioner be ordered to compute and pay benefits on the two applications appealed herein, that judgment be entered in favor of plaintiff pursuant to sentence four of 42 U.S.C. § 405(g), and that the clerk be directed to close the file.

At Pensacola, Florida this 19th day of August, 2005.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.** See **28 U.S.C. § 636;** ***United States v. Roberts,*** **858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 3:04cv355/MCR/MD*